Billy J. WILLIAMS, Plaintiff,

v.

Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant.

No. 98–CV–0606–EA.

United States District Court, N.D. Oklahoma.

Sept. 10, 1999.

Paul F McTighe, Jr, Tulsa, OK, for Billy J Williams, plaintiff.

Cathryn Dawn McClanahan, United States Attorney, Tulsa, OK, for Social Security Administration, Commissioner—Kenneth S Apfel, defendant.

## ORDER

EAGAN, United States Magistrate Judge.

Claimant, Billy J. Williams, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying claimant's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the ALJ and asserts that the Commissioner erred because the ALJ incorrectly determined that claimant was not disabled. On September 1, 1999, the Court heard oral argument in this matter. For the reasons discussed below, the Court **REVERSES** and **REMANDS** the Commissioner's decision for an immediate award of benefits for the period October 2, 1990 to February 12, 1996.

### Social Security Law and Standards of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy ...."*Id.*, § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

 Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997) (citation omitted). The term substantial evidence has been interpreted by the U.S. Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991). Nevertheless, the Court must review the record as a whole, and "the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95

---

1. Step one requires claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1521. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant—taking into account his age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.

L.Ed. 456 (1951); *see also Casias,* 933 F.2d at 800–01.

### Procedural History

On March 1, 1989, claimant protectively filed for Supplemental Security Income benefits under Title XVI (42 U.S.C. § 1381 *et seq.*). A hearing before Administrative Law Judge (ALJ) James D. Jordan was held April 17, 1990, in Tulsa, Oklahoma. (R. 22–57) By decision dated May 31, 1990, the ALJ found that claimant was not disabled at any time through the date of the decision. (R. 9–16) On March 21, 1991, the Appeals Council denied review of the ALJ's findings. (R. 3–4) On February 26, 1992, the Northern District of Oklahoma (hereafter the "District Court") remanded, upon motion of the defendant, for further development of the record and specific findings of fact. (R. 283) On June 18, 1992, the Appeals Council vacated its denial of the claimant's request for review and remanded the issue to an ALJ for further proceedings. (R. 281–82)

A supplemental hearing before ALJ Richard J. Kallsnick was held on March 17, 1993, in Tulsa, Oklahoma. (R. 284–322) By decision dated September 8, 1993, the ALJ found that claimant was not disabled at any time through the date of the decision. (R. 260–75) On July 15, 1994, the Appeals Council declined to assume jurisdiction. (R. 255–56) The District Court again reversed and remanded the case on June 28, 1996. (R. 438–50) The Appeals Council ordered that the case be remanded on September 27, 1996. (R. 451–52)

A third hearing was held before ALJ Kallsnick on April 27, 1997, in Tulsa, Oklahoma. (R. 516–61) By decision dated August 18, 1997, the ALJ found that claimant was disabled from October 19, 1988, until October 1, 1990, when claimant's condition had sufficiently improved to enable him to work. The ALJ found that claimant became disabled again on February 13, 1996, when he suffered a brain aneurysm. (R.

410–25) On June 15, 1998, the Appeals Council declined to assume jurisdiction. (R. 401–02) Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

### Claimant's Background

Claimant was born on November 8, 1931, and was 65 years old at the time of the third administrative hearing in this matter. He has a 12th grade education. Claimant worked as a building cleaner for American Airlines until 1974. After 1974, he did odd jobs such as washing a few cars or shining shoes from time to time, and he has collected and sold some beer cans for money. He also played golf and performed some volunteer work for a golf association, such as selling advertisements for a tournament and raising money for charitable purposes or distributing food during the holiday season. Claimant alleges an inability to work prior to March 1, 1989,[2] due to left shoulder pain, left hand pain, bad memory, low energy, pain and limited mobility.

Claimant testified that he first injured his shoulder while he was working at American Airlines in 1969. In 1988, he reinjured his shoulder when he was helping someone push a golf cart at the golf course. He first visited the Springer Clinic in Tulsa on October 19, 1988, complaining of shoulder pain. An arthrogram on January 17, 1989, indicated a rupture of the rotator cuff on the left, and claimant had a surgical repair with partial acromioplasty on February 7, 1989. He was released for therapy through June 8, 1989. Although his doctor and therapist did not believe that claimant put forth adequate effort in his physical therapy program, the doctor released him in March 1989 to begin swinging golf clubs. (R. 146, 174) By April 28, 1989, claimant had begun to swing golf clubs, and his therapist believed

**2.** Claimant claimed that his condition first bothered him in June 1988 (R. 74). However, past due benefits cannot be paid to the claim-

ant prior to the date he filed his application, 20 C.F.R. § 416.501; thus, the onset date is March 1, 1989.

he had achieved his maximum benefit from physical therapy at that time. (R. 171)

On May 18, 1989, Richard Cooper, D.O., evaluated claimant, indicating that the range of motion of claimant's left shoulder was reduced to 40 degrees abduction and his shoulder would move a total of 60 degrees. (R. 159–61) At his first hearing on April 17, 1990, claimant first testified that had fished a couple of times in 1989, and he had played golf a couple of times in 1990. (R. 31) In that same hearing, he testified that he played golf two or three times per month (R. 38) He claimed that he used to have a golf handicap of six or seven; he shot in the mid-to-high 70s. (R. 39)

Claimant reported that he was in a motor vehicle accident on August 3, 1990, re-injuring his left shoulder. (R. 351) On October 1, 1990, claimant reported that his left shoulder was much better, that he was seeing a chiropractor, and that he thought the injection he received had improved his shoulder. (R. 350) He was evaluated by E. Joseph Sutton, II, D.O., on December 29, 1992, at the request of the Social Security Administration. Dr. Sutton's diagnostic impression was that claimant had a frozen left shoulder, post surgery for rotator cuff tear. He opined that claimant would not be able to use his left arm if he had to lift any weight about his head, but that he "would not have any difficulty lifting any weight to at least waist high." (R. 383) He further stated that claimant would not be able to reach above shoulder height with his left arm. (*Id.*)

At the second hearing on March 17, 1993, claimant testified that he had taken several trips within the preceding year to visit family. He had been to Florida and California. (R. 300–301) Claimant suffered a cerebral aneurysm while he was playing golf in Florida on February 13, 1996; he had complications associated with the aneurysm thereafter. (*See* R. 464–511) At his third hearing, on April 27, 1997, he first testified that the last golf tournament in which he played was in 1994 or 1995. (R. 538, 542) It was two days, 36 holes, and his last score was in the 80's or 90's. (R. 539) However, he commented that the aneurysm had affected his ability to think and remember well. (*See* R. 539). He also claimed that, since the aneurysm, he has low energy (R. 526), and his daughter testified that the aneurysm had affected his short term memory. (R. 547)

### The ALJ's Decision

The ALJ made his decision at the fifth step of the sequential evaluation process. The ALJ found that claimant was disabled from October 19, 1988,[3] when he first visited Springer Clinic for shoulder problems, to October 1, 1990, when the claimant reported that his left shoulder was much better, that he was seeing a chiropractor, and that he thought the injection he received had improved his shoulder. During that two-year time period, claimant's impairment limited him to medium work activity that did not require him to lift his left arm above shoulder level. However, the ALJ found claimant had medical improvement in his condition related to his ability to work, such that his disability ceased on October 1, 1990. The ALJ found that claimant became disabled again on February 13, 1996, when he suffered a brain aneurysm. The ALJ determined that, during the closed period of October 2, 1990 to February 12, 1996, claimant had the residual functional capacity (RFC) to perform a full range of medium work. The ALJ stated that 20 C.F.R. § 416.969 and Rule 203.14 of Table No. 3, Appendix

---

**3.** On October 19, 1988, claimant was 57 years old; the ALJ erroneously states that 57 is defined as a younger individual in the regulations. He also miscites the regulation by reference to 20 C.F.R. § 416.953. (R. 423) The regulation is at 20 C.F.R. § 416.963, and 57 years is defined as a person of advanced age. It is clear, however, that the ALJ evaluated claimant as a person of advanced age, both explicitly and given his reference to 20 C.F.R. § 416.969 and Rule 203.14 of Table No. 3 of Appendix 2, Subpart P, Regulations No. 4 for his conclusion that claimant was not disabled between October 1, 1990 and February 13, 1996. (*Id.*)

2, Subpart P, Regulations No. 4 (20 C.F.R. Pt. 404, Subpt. P, App. 2) direct a conclusion that claimant was not disabled during that time period. However, he also recited, in the body of his decision, the testimony of the vocational expert (VE). She testified that there were a significant number of unskilled, medium jobs in the regional and national economies that claimant could have performed, despite his impairments and based on his RFC, age, education, and work experience between October 1, 1990 and February 13, 1996.

### Issues

Claimant asserts as error the ALJ's finding that the claimant had full motion of his left shoulder after October 1, 1990, and therefore could perform a full range of medium work. He contends that his finding is not supported by substantial evidence.

However, the briefs of the claimant and the Commissioner indicate that a key issue in this appeal is whether an ALJ must use a previous RFC assessment on remand, or whether he may change the RFC on remand after a *de novo* review of the record. Thus, the District Court's 1996 remand decision is critical to this appeal. The District Court reversed and remanded because claimant could not perform the jobs that the VE testified, and the ALJ found, claimant could perform, given the claimant's RFC as found by the ALJ. In the 1993 decision, the ALJ found that claimant could perform the full range of medium work provided that claimant was not required to reach or lift above shoulder level with the left extremity. The District Court concluded that "there is such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's finding]." (R. 442)

The District Court remanded, however, because the Commissioner relied upon erroneous VE testimony that the jobs of janitor and grounds keeper were unskilled medium work. (R. 445–48) Under the Dictionary of Occupational Titles ("DOT"), these jobs are semi-skilled, and the DOT controls if it conflicts with expert testimony. Because of claimant's age and lack of transferable or highly marketable skills, he must be found disabled if he is restricted to light and sedentary jobs. 20 C.F.R. § 1563(d).[4] The District Court stated that, "upon remand, it is very likely the Secretary would be obliged to return a finding that Claimant is now disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2. However, the Court cannot assume this." (R. 448)

The District Court also suggested, in *dicta*, that the "ALJ may wish to consider refinement of his hypothetical question" because he did not accurately describe the limitations in the hypothetical he posed to the vocational expert. (R. 445) The District Court noted claimant's argument that the limitation should have included a restriction that claimant would have difficulty lifting weight between waist height and shoulder height, given the report of the consultative examiner, Dr. Sutton. (*Id.*; *see* R. 381–83) The parties now disagree as to the law of the case which controls the ALJ's decision on remand.

Claimant argues that, on remand, the ALJ found that claimant's ability to perform medium work was not restricted by the inability to reach or lift above shoulder level with his left arm, thus violating the law of the case. (Cl.Br., Docket # 7, at 3–4.) Claimant argues that the District Court concluded that the ALJ's prior RFC assessment was supported by substantial

4. 20 C.F.R. § 404.1563(d) provides:

*Person of advanced age.* We consider that advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity. If you are severely impaired and of advanced age and you cannot do medium work ... you may not be able to work unless you have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy. If you are close to retirement age (60–64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are highly marketable.

evidence, and claimant contends that the District Court remanded the case for a determination of whether a significant number of unskilled medium jobs were available for a person with those limitations. (*Id.* at 2, 4.) Claimant points out that the VE testified, on remand, that jobs at a unskilled level of medium exertion require a full range of shoulder motion. (*Id.* at 3; *see* R. 553.) Claimant appears to fault the ALJ for reopening the case without good cause. (*Id.* at 4.) Claimant also asserts that the ALJ erred in rejecting Dr. Sutton's report (*id.*), and that there is no evidence in the record which proves that claimant had full motion of his shoulder after October 1, 1990. (*Id.* at 5.)

The Commissioner's brief details the claimant's lack of credibility, given claimant's ability to play golf, fish, and travel after the surgery, as well as claimant's failure to participate fully in physical therapy, his failure to make appointments, his lack of medication for severe pain, his failure to submit for manipulation under anesthesia or for surgery, his active lifestyle, the evasiveness of his answers at hearing, and the inconsistencies in his testimony. (Def.Br., Docket # 12, at 1–15.) The Commissioner asserts that the prior RFC determination that claimant could not lift his left arm above shoulder level was based largely on plaintiffs subjective complaints. (*Id.* at 15.) The Commissioner contends that the law of the case doctrine is not applicable because the District Court did not make a specific factual finding regarding claimant's RFC. (*Id.* at 16.) The Commissioner argues that a remand order does not bind the ALJ to the earlier RFC finding. (*Id.* at 17.) He also maintains that 20 C.F.R. § 404.989(a), a regulation cited by claimant, is not applicable because the claimant has not requested a re-opening of the case. (*Id.* at 18). Finally, the Commissioner contends that evidence in the record supports the ALJ's selection of October 1, 1990 as the onset date for claimant's disability because it is the date claimant stated that his shoulder was much better. (*Id.; see* R. 350)

## Law of the Case

■ The Court is unaware of any published social security disability benefits case in which the Tenth Circuit has specifically applied the law of the case doctrine. However, the Seventh Circuit has applied it in this administrative context, holding that "[t]he law of the case doctrine requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Wilder v. Apfel,* 153 F.3d 799, 802 (7th Cir.1998). "[I]f there is no new evidence, or if ... the evidence does not undermine the previous ruling on sufficiency, then that previous ruling must stand." *Id.; see also Key v. Sullivan,* 925 F.2d 1056, 1060 (7th Cir.1991) ("The gist of the [law of the case] doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case.") Further, "[i]f an issue is left open after remand, the lower tribunal is free to decide it." *Key,* 925 F.2d at 1060. In *Key,* the Seventh Circuit found that the Secretary of Health and Human Services exceeded the scope of the district court's remand order and violated the law of the case doctrine by expanding his previous inquiry to evaluate whether the claimant could perform any other past relevant work or other work in the national economy. *Id.*

The Eighth Circuit has indicated that the law of the case doctrine does not bar an ALJ, on remand, from making a finding that differs from a prior ALJ's finding in the same case. *Steahr v. Apfel,* 151 F.3d 1124 (8th Cir.1998). The *Steahr* court relied on the district court's statement in its second order that, since the previous decision was reversed and remanded, there was no law of the case to be considered from the first ALJ's decision. *Id.* at 1126. The *Steahr* court relied upon its decision in *Brachtel v. Apfel,* 132 F.3d 417 (8th Cir.

1997). The *Brachtel* court held that the law of the case doctrine did not apply where the district court did not specifically instruct the ALJ to proceed on remand based upon a factual finding as to the claimant's RFC. The court simply instructed the ALJ to create a full and proper record. *Steahr*, 151 F.3d at 1125 (citing to *Brachtel*, 132 F.3d at 420).

These decisions are in accord with Tenth Circuit law in other contexts. *See, e.g., Ute Indian Tribe of the Uintah and Ouray Reservation v. State of Utah*, 114 F.3d 1513, 1520 (10th Cir.1997) (under the law of the case doctrine, "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case"); *Mitchell v. Maynard*, 80 F.3d 1433, 1448 (10th Cir.1996) ("[t]he law of the case doctrine provides that once an appellate court decides an issue the decision will be binding on all subsequent proceedings in the same case"); *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1181 (10th Cir.1995) ("when a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal").

▮ The law of the case applies to issues that are resolved implicitly as well as to those decided explicitly. *Rishell v. Jane Phillips Episcopal Memorial Medical Center*, 94 F.3d 1407, 1410 (10th Cir. 1996); *Wilmer v. Board of County Commissioners of Leavenworth County*, 69 F.3d 406, 409 (10th Cir.1995); *Guidry v. Sheet Metal Workers Intern. Ass'n, Local No. 9*, 10 F.3d 700, 707 (10th Cir.1993), *modified on other grounds*, 39 F.3d 1078 (10th Cir.1994). "When further proceed-

ings follow a general remand, the lower court is free to decide anything not foreclosed by the mandate issued by the higher court." *Guidry*, 10 F.3d at 705 (citation omitted). However, there are three circumstances in which an issue will be considered implicitly decided for purposes of the law of the case. The doctrine applies when: (1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated. *Rishell*, 94 F.3d at 1410; *Guidry*, 10 F.3d at 707.

The 1996 decision by the District Court could be deemed a general remand, leaving the ALJ free to decide the RFC issue anew. Yet, even if it is not deemed a general remand, the RFC issue was not implicitly decided because the District Court expressly noted that resolution of the issue was not a necessary step in resolving the appeal. The District Court stated that "the turning point in this case is whether the Secretary can meet her burden by identifying jobs which claimant, now close to retirement age, can perform." (R. 445)[5] Further, resolution of the issue would not have necessarily abrogated the prior decision because the District Court focused on the VE's error in classifying the jobs the ALJ found that claimant could perform. As indicated above, the VE's testimony that the jobs of janitor and groundskeeper were unskilled medium work conflicted with the DOT.

---

5. The District Court, in its decision of June 28, 1996, could not have known that, on remand, claimant could be found disabled as of February 13, 1996, due to the brain aneurysm. The District Court correctly assumed that, on remand, the ALJ would be looking at claimant's then-current age as "close to retirement age (60–64)" regarding marketability of skills. During the closed period, claimant was 58–59 years of age ("advanced age") for

part of the period, and 60–64 years of age (close to retirement age) for the remainder of the period. He turned 65 years old on November 8, 1996, after the closed period ended on February 13, 1996. However, the ALJ considered claimant to be 57 years old, a "person of advanced age," during the closed period. Claimant was also close to retirement age.

■ Finally, the issue is not so closely related to the earlier appeal that its resolution involves no additional consideration and so might have been resolved but unstated. The District Court previously determined that, as to the RFC, "there is such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's finding]." (R. 442) It did not find that the RFC, if altered, would be unsupported by substantial evidence. The problem with the prior decision by the ALJ was that he failed to issue a finding consistent with his RFC determination; the District Court did not mandate a particular RFC determination. Further, the District Court suggested that the ALJ also refine his hypothetical question to reflect the limitations he found; it did not dictate the limitations.[6]

The Tenth Circuit has recognized that an ALJ is not bound to an earlier decision on remand from the Appeals Council. *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir.1987). "The ALJ's redetermination of the residual functional capacity was not inconsistent with [the Appeals Council's remand order]. Nor did the order bind the ALJ to his earlier decision. To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate." *Id.; see* 20 C.F.R. § 404.977. The Appeals Council's remand order in this instance directs the ALJ to conduct further proceedings consistent with the District Court's remand order. (R. 451) The ALJ should not be bound by his earlier decision on remand because the remand order does not require a finding that claimant could not reach or lift above shoulder level with the left extremity. The order does require that the ALJ's RFC assessment be supported by substan-

tial evidence, that the ALJ's question to the vocational expert precisely reflect claimant's RFC, and that there be a significant number of unskilled, medium jobs in the regional and national economies that claimant could have performed, based on his RFC, age, education, and work experience.[7]

**RFC Assessment**

The issue remains whether there is substantial evidence to support the ALJ's finding that claimant had full motion of his left shoulder between October 2, 1990 and February 2, 1996, such that he could perform a full range of medium work. As the Commissioner points out, claimant has serious credibility problems. The ALJ discussed these and relied, in part, on claimant's own statements to his treating physicians after his 1989 surgery and his 1990 motor vehicle accident to discredit claimant. Because the ALJ has the opportunity not only to observe the claimant, but also to consider how the claimant's testimony compares with other evidence, the ALJ's credibility determinations are given great deference and will not be set aside when supported by substantial evidence. *Bean v. Chater*, 77 F.3d 1210 (10th Cir.1995). However "the credibility determination is just a step on the way to the ultimate decision. The ALJ must also determine whether the claimant has an RFC level and can perform the full range of work at his or her RFC level on a daily basis." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir.1993).

The Commissioner argues that claimant's statement to Dr. Hendricks on August 24, 1990, that "he has been doing real well, playing golf all summer and being active" (R. 351), permits the inference that claimant had a full range of motion in his shoulder. However, the notation contin-

---

6. In essence, the District Court's remarks regarding the previous RFC finding were *dicta,* and the Tenth Circuit has explicitly held that *dicta* is not subject to the law of the case doctrine. *United States v. Rice,* 76 F.3d 394, 1996 WL 44452 at *4 (10th Cir. February 5, 1996) (unpublished decision).

7. Claimant's reliance on 20 C.F.R. § 404.989(a) is misplaced, as the Commissioner contends. This matter does not involve a reopening of the case.

ues with a statement that claimant was in a motor vehicle accident on August 3, 1990, in which he sustained injury to his left shoulder when he was thrown into the steering wheel and driver's side door. Claimant complained of limited range of motion after the accident and of occasional pain in his left shoulder while at rest. (*Id.*)

■ The Commissioner also relies on claimant's statements on October 1, 1990, that his shoulder was "much better," he was "seeing a chiropractor," and he thought "the injection he received has really improved his shoulder." (R. 350) None of these statements, however, prove that claimant could lift his shoulder above shoulder height, a prerequisite for a finding that claimant could do medium work. In connection with a possible termination in benefits, medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s) . . . ." 20 C.F.R. § 404.1594(b)(1). A medical improvement is related to a claimant's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities. . . ." *Id.* § 404.1594(b)(3). The comments made by claimant to his doctor on October 1, 1990 provide neither a sufficient basis for the ALJ's selection of that date as the date that claimant's original disability ended, nor substantial evidence of medical improvement to do medium work during the subsequent period.

■ The only evidence in the record of any medical treatment for claimant's shoulder during that subsequent period (1990–96) is one notation in the legible notes from Springer Clinic regarding claimant's request for Tylenol # 3 to relieve the pain in his left shoulder. (R. 339) However, Dr. Sutton examined claimant on behalf of the Social Security Administration on December 29, 1992. Dr. Sutton completed a range of motion evaluation

chart, indicating that claimant was unable to abduct or flex his left shoulder more than 90–100 degrees. (R. 384) A normal range of motion is 160 degrees. He noted this restriction in his written report. (R. 382). He also wrote that claimant had good bilateral grip strength and upper extremity strength, and there was no point tenderness or crepitus in claimant's left shoulder. (*Id.*) His diagnostic impression included these remarks:

> He should be able to lift or carry any weight commensurate with his size. *If the patient had to lift any weight about [sic] his head, he would not be able to use his left arm because of the restriction in his shoulder. The patient,* however, has quite normal upper extremity strength and *would not have any difficulty lifting any weight to at least waist high.* The patient has no restriction of his feet with regard to repetitive movements. He has no restriction in his hands with regard to repetitive movements and has good bilateral grip strength. He has good finger-thumb approximation on both hands. He was able to dress and undress himself without any difficulty. The patient would be able to continuously bend, squat, crawl, climb or reach. *The only restriction would be that his reaching with his left arm would have to be below about shoulder height because that is about as high as he is able to raise his left arm.* He would be able to reach in front of him or off to the side without any difficulty. There are no restrictions regarding any of the environmental factors.

(R. 383) (emphasis added).

The ALJ is required to "evaluate every medical opinion" he receives, 20 C.F.R. § 404.1527(d), and to "consider all relevant medical evidence of record in reaching a conclusion as to disability," *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir.1989), even though he is not required to discuss every piece of evidence. "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the un-

controverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007 (10th Cir.1996) (citations omitted).

The ALJ rejected Dr. Sutton's opinion that claimant could not lift his left arm above shoulder height because he deemed "Dr. Sutton's assessment inconsistent with his written report." (R. 421) The ALJ was not required to afford Dr. Sutton's opinion controlling weight, given that Dr. Sutton was not claimant's treating physician, and he examined claimant only one time. *See* 20 C.F.R. § 416.927. However, it is the only medical evidence during the 1990–96 time period regarding claimant's shoulder problems other than claimant's request for pain medication.

The ALJ focused his credibility findings on claimant's lifestyle and lack of treatment for disabling pain. (R. 420) In particular, the ALJ noted that claimant went on trips to visit his children, went fishing, and "played golf occasionally." (*Id; see* R. 382, 465, 530, 531) However, claimant played golf during the earlier (1988–90) period of disability determined by the same ALJ.[8]

The issue is whether claimant could perform medium work during the period in question. The VE testified that medium jobs at the unskilled level required a "full range of motion" (R. 553), but that there were numerous light and sedentary jobs at the unskilled level in the regional and national economies that claimant could perform. (R. 553) The regulations mandate a finding of disability for a person who is 55 years of age or over if that person is severely impaired, cannot do medium work, and has no skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy. 20 C.F.R § 404.1563(d). Persons who are close to retirement age (60–

64) and have a severe impairment are not considered able to adjust to sedentary or light work unless they have skills which are highly marketable. *Id.* The VE testified that claimant had no transferable or marketable skills. (R. 558; *see also* R. 54, 319)

Based on this record, the Court cannot find substantial evidence to support a finding that claimant could lift his arm above shoulder height between October 2, 1990 and February 12, 1996. Thus, claimant did not have a full range of motion and could not perform medium work. The regulations mandate a finding of disability because of his age. The decision of the ALJ that claimant was not disabled from October 2, 1990 to February 12, 1996 is not supported by substantial evidence and must be reversed.

With regard to the advisability of another remand, claimant's testimony following his aneurysm is not reliable, a physical examination at this point would not reveal his physical condition as it existed in the 1990–96 time period, and there is no other evidence from the 1990–96 time period. Thus, the Court has no viable alternative but to reverse for an immediate award of benefits. It is within the Court's discretion to remand for further administrative proceedings or for an immediate award of benefits. *Ragland v. Shalala,* 992 F.2d 1056, 1060 (10th Cir.1993). If additional fact-finding would serve no useful purpose, remand for an immediate award is appropriate. *See Sorenson v. Bowen,* 888 F.2d 706, 713 (10th Cir.1989). This opinion does not indicate that the Court believes claimant is deserving of benefits for that time period; it merely indicates that the evidence is insufficient to prove that he was not.

---

**8.** It seems contradictory to the Court (as perhaps it did to the ALJ) that a person suffering from a severe impairment of the left shoulder could play golf, even occasionally. However, there is no evidence that a right-handed golfer has to lift his left elbow above his shoulder during his golf swing, and thus that a golf swing for a right-handed golfer requires a full range of motion of the left shoulder.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence. **IT IS THEREFORE ORDERED** that, pursuant to sentence four, 42 U.S.C. § 405(g), the decision of the Commissioner is **RE-VERSED** and **REMANDED** for an immediate award of benefits for the period October 2, 1990 to February 12, 1996.

### *JUDGMENT*

This action has come before the Court for consideration and an Order reversing and remanding the case to the Commissioner has been entered. Judgment for the Plaintiff and against the Defendant is hereby entered pursuant to the Court's Order.