NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois  60604

Argued June 10, 2009
Decided June 16, 2009

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-3833

| | |
|---|---|
| SUZANNE L. BRIHN,<br>*Plaintiff-Appellant* | Appeal from the United States District Court<br>for the Western District of Wisconsin. |
| *v.* | No. 3:08-cv-00246-bbc |
| MICHAEL J. ASTRUE,<br>*Defendant-Appellee.* | Barbara B. Crabb,<br>*Chief Judge.* |

**ORDER**

Suzanne Brihn challenges the Social Security Administration's determination that she is not disabled.  Two previous ALJs had concluded that, though she suffered from fibromyalgia, she was not disabled; when Brihn asked the Appeals Council to review the second decision, the administrative record was lost, so the Council vacated that ruling and ordered a third hearing, from which this appeal is taken.  Brihn argues that the ALJ erred, first, by favoring the opinion of the independent medical expert over that of her examining physician; second, by doubting her credibility based on her account of her daily activities; and third, by supporting her conclusions with references to evidence cited in the previously vacated decision.  We affirm.

## Background

Brihn worked as a cook at a nursing home and as a home health aide before leaving the labor force in 1993 due to fatigue, weakness, and pain. The record does not document a physician visit until 1995, when Brihn was referred to Dr. Conrad Butwinick, a rheumatologist, who thought Brihn's symptoms suggested fibromyalgia. Dr. Butwinick tested Brihn for the tender points characteristic of that condition; finding those points present, he diagnosed her with fibromyalgia, even though the rest of her physical exam was unremarkable.

The following year, in 1996, Brihn's attorney wrote Dr. Butwinick asking him to evaluate Brihn's condition. Dr. Butwinick replied that Brihn suffered from fatigue, disrupted sleep, and widespread pain; he also noted that Brihn "admitted to feeling depressed" and that "[t]here was some minor cognitive impairment." He cautioned that Brihn should at most occasionally carry, bend, climb, crawl, squat, push, pull, and lift objects of any weight and advised that she could sit for up to four hours in a workday, stand for up to two, and walk for up to three. In a 2001 follow-up letter, Dr. Butwinick modified his recommended limitations, explaining that his earlier assessments reflected Brihn's best-case functional capacity, which she realized perhaps 10% of the time. Generally, Dr. Butwinick clarified, Brihn was incapable of climbing, crawling, or squatting and could sit for only two hours in a workday and stand or walk for only one.

Brihn first applied for disability insurance benefits in 1996, an ALJ denied her claim, and the Appeals Council declined review. We affirmed. *Brihn v. Apfel*, 2000 WL 1277628 (7th Cir. 2000) (unpublished order). Brihn reapplied for benefits in 2001, but that claim was also denied. Brihn again asked the Appeals Council to review her case, but the administrative record was lost, and the Council accordingly ordered a new hearing.

At her most recent hearing before an ALJ in 2007, Brihn testified that since 1997 (when the ALJ found her not disabled) she had difficulty sustaining any activity for more than a few minutes because of pain and fatigue. Her pain worsened between 1997 and 1998, she continued, and was sometimes so intense that she could not tolerate being touched. She also testified that she experienced spasms that prevented her from sleeping and caused her to drop objects. Nonetheless, Brihn told the ALJ, she typically prepared her children for school, picked up around the house and washed dishes, did laundry with assistance, shopped for groceries (someone else had to carry her purchases), and made dinner, although she noted that making even a simple meal might take her over an hour. Brihn added that she was often forgetful and needed to nap twice most days.

For reasons not reflected in the record, the ALJ brought in an impartial medical expert, Dr. Andrew Steiner, to evaluate whether Brihn's medical records established her

purported impairments. Dr. Steiner thought they did not. He noted, for example, that there was no record of any cognitive or psychiatric test to support Dr. Butwinick's conclusion that Brihn suffered from a cognitive impairment and depression—indeed there were no medical records whatsoever pertaining to these conditions, beyond Dr. Butwinick's letters to counsel. Brihn's complaint of muscle weakness was similarly unsubstantiated in the record, as there was no evidence that she had undergone strength testing (to evaluate her impairment) or been prescribed an exercise regime (to counteract atrophy). On the other hand, Dr. Steiner conceded that Brihn's heavy use of the painkiller Ultram suggested that she experienced a high level of pain. All in all, according to Dr. Steiner, the medical record established that Brihn should not use her hands and legs continuously, but could perform all other activities without restriction.

The ALJ, accepting in part Dr. Steiner's view of Brihn's limitations, asked a vocational expert whether there were jobs for a hypothetical person who could lift 10 pounds frequently and 20 occasionally, sit for two hours each workday, and spend the remainder sitting or walking. The ALJ also incorporated into her query restrictions on frequent repetitive leg and arm activities. For a person so limited, the VE concluded, there existed 4,400 jobs in the state of Wisconsin, including factory laborer and office assistant.

The ALJ performed the requisite five-step analysis, *see* 20 C.F.R. §§ 404.1520, 416.920, concluding that Brihn was not disabled because appropriate jobs were available to her. The ALJ found that Brihn had not engaged in gainful work activity since the issuance of the first ALJ decision (step one); that she had a severe combination of impairments, namely, fibromyalgia and residual damage from knee surgery (step two); that because there was little evidence of objective medical changes with regard to joint and muscle functioning, these impairments did not match any listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (step three); that although Brihn suffered from impairments and could not do her past work, she had sufficient residual functional capacity to do a job requiring some sitting, standing and lifting of up to 20 pounds (step four); and that a person with those limitations could still work (step five).

The Appeals Council denied review, and the district court affirmed the Commissioner's ruling.

## Analysis

Brihn presents three challenges to the ALJ's decision, which we review deferentially, asking only whether substantial evidence supported the ALJ's conclusions. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

### 1. Examining Physician's Opinion

Brihn argues that the ALJ was obliged to give controlling weight to Dr. Butwinick's opinions and impermissibly favored Dr. Steiner's view. In particular, Brihn submits that the ALJ was required at step two to add depression and cognitive impairment to her list of impairments because Dr. Butwinick concluded that she suffered from those conditions.

The ALJ was entitled to agree with Dr. Steiner that, in the absence of objective medical or psychiatric findings or descriptions, the record did not establish any mental impairment. An ALJ must give controlling weight to a treating physician's opinion "only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (internal quotations omitted); *see* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Yet Dr. Butwinick's opinions regarding Brihn's purported mental impairments were neither supported with medically acceptable diagnostic techniques nor consistent with substantial evidence in the record. The only hints in the entire administrative record that Brihn suffered from depression or cognitive impairment are Dr. Butwinick's statements that Brihn suffered from some unspecified cognitive impairment and that she "admitted to feeling depressed" and Brihn's own testimony that she was forgetful and had a difficult time focusing. A claimant's description of her own symptoms are not, however, enough to establish an impairment, *see* 20 C.F.R. § 404.1508, 404.1528, and Dr. Butwinick's evaluation of her cognitive abilities was not grounded in any medically acceptable diagnostic techniques.

Brihn further insists that Dr. Butwinick's diagnosis of fibromyalgia required the ALJ to determine that she suffered from depression and cognitive impairment—conditions she claims are related to fibromyalgia. But as the Commissioner points out, Brihn forfeited this argument by not making it first to the ALJ. In any event, there is nothing in the record to support her contention that a fibromyalgia diagnosis is itself sufficient to establish the presence of a mental impairment.

### 2. Residual Functional Capacity

Brihn also argues that the ALJ committed two errors in her step-four determination of Brihn's residual functional capacity. First, she contends that the ALJ impermissibly failed to take into account her mental impairments. Notwithstanding the adverse finding at step two, Brihn argues that the ALJ erred by not assessing her mental impairments, in violation of 20 C.F.R. § 404.1545(a)(2), which requires an ALJ to consider all of a claimant's medically determinable impairments, including those that are not severe. This argument misapprehends the ALJ's step-two analysis: the ALJ determined not just that Brihn's

mental impairments were not severe, but that they were not even medically determinable. An ALJ has no obligation to discuss residual functional capacity in light of impairments that are not medically established. *See* 20 C.F.R. § 404.1545(a)(2); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

Next Brihn contends that the ALJ inappropriately discredited her based on her account of her ability to perform household chores. She adds that the ALJ ignored the fact that she took large doses of painkillers.

The ALJ's credibility evaluation was not clearly incorrect. ALJs must substantiate their credibility findings with specific and logical reasons, based on the record as a whole, *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488-89 (7th Cir. 2007), and should consider such factors as objective medical evidence; the claimant's daily activities; the claimant's treatment history; and the type, dosage, and side effects of any medications, *see* 20 C.F.R. § 404.1529(c). It is true that *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) held that activities much like Brihn's (including preparing children for school, cooking meals, cleaning up the house, shopping, and doing laundry and dishes) do not necessarily undermine a claim of disabling pain. And the ALJ should have mentioned all of the drugs that Brihn took, not just Ultram. *See* 20 C.F.R. § 404.1529(c). But the ALJ offered other specific reasons for disbelieving Brihn's account: there was little objective medical evidence (e.g., no record of muscle atrophy), and Brihn's sparse treatment history—only four visits to Dr. Butwinick in six years—seemed inconsistent with disability.

### 3. Non-Record Evidence

Brihn also contends that the ALJ went outside the record, in violation of 42 U.S.C. §405(b) and 20 C.F.R. § 404.953(a), when she cited the previous administrative decision, which was vacated by the Appeals Council after the administrative record was lost. The ALJ twice referenced evidence from the prior hearing. First, the ALJ invoked the earlier decision to support her step-two determination that Brihn had not established that she suffers from depression or other cognitive issues:

> Although the record with respect to the January 2003 decision in this case cannot be located, the January 2003 decision indicates that the Disability Determination Services (DDS) psychological consultants also determined that during the period from September 1997 to December 31, 1998 the claimant was not subject to a medically determinable mental impairment. The undersigned gives their opinion great weight, because it is consistent with the overall evidence of record.

Second, in declining to reduce her step-four assessment of Brihn's residual functional capacity, the ALJ observed that "the opinion of the Disability Determination Services (DDS) medical consultants, who limited the claimant to work at the light exertional level, is essentially consistent with the above residual functional capacity. Their opinion is referred to in the September 2003 Administrative Law Judge decision."

Brihn is correct that citing evidence not in the current record was an error, *see* 42 U.S.C. §405(b); 20 C.F.R. § 404.953(a); *Yang v. Shalala*, 22 F.3d 913, 217 (9th Cir. 1994), but it is not one that requires remand. This outside evidence was but one of many factors considered by the ALJ, including Dr. Steiner's opinion and the lack of medical or psychiatric evaluations. Even without those citations, the ALJ's decision would have been well-supported.

Brihn also argues, confusingly, that the district court should have ordered the Commissioner to reconsider her case in light of unspecified evidence from the lost record. Sentence six of 42 U.S.C. § 405(g) authorizes a district judge to remand a case to the Social Security Administration if 1) the claimant presents new, material evidence that was not incorporated into the previous agency record for a good reason, or 2) the Commissioner requests a remand for good cause before responding to the petition for judicial review. *Shalala v. Schaefer*, 509 U.S. 292, 297 fn. 2 (1993). Brihn never made a motion to the district court, and neither did the Commissioner, so a sentence-six remand was impossible. Even more frivolous is Brihn's argument that the Commissioner was somehow obligated to file a sentence six-motion.

Finally, Brihn argues that the Commissioner deliberately interfered with her attempts to obtain benefits by delaying and losing the record; citing *Wilder v. Apfel*, 153 F.3d 799 (7th Cir. 1998), she argues that this "obduracy" entitles her to benefits. This is a losing argument because "[o]bduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005). Moreover, the agency's behavior here, while perhaps careless, was a far cry from that in *Wilder*, 153 F.3d at 181, where the ALJ on remand ignored our ruling that the spartan medical evidence in the record in no way contradicted the conclusion of the agency's own disinterested expert that the claimant was totally disabled.

Accordingly, we **AFFIRM** the district court's judgment.