Slip Op. 03-101

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

CORUS STAAL BV, and
CORUS STEEL USA INC.

      Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
COMMERCE

      Defendants,

      and

NATIONAL STEEL CORP.,
BETHLEHEM STEEL CORP., and
UNITED STATES STEEL CORP.,

      Defendant-Intervenors.

: : : : : : : : : : : : : : : : : : : : : : : : :

Consolidated Court No. 02-00003

_____

[Antidumping Duty Determination Remanded]

Dated:  August 12, 2003

    Steptoe & Johnson LLP (Richard O. Cunningham, Joel D. Kaufman, and Alice A. Kipel) for plaintiffs.

    Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Lucius B. Lau, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Paul D. Kovac), for defendant.

    Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer, John J. Mangan,

James C. Hecht) for defendant-intervenors Bethlehem Steel Corporation, National Steel Corporation, and United States Steel Corporation.

## OPINION

**RESTANI, Judge:**

This consolidated matter is before the court following its decision in Corus Staal BV v. United States, 259 F. Supp. 2d 1253 (Ct. Int'l Trade 2003) ("Corus I"), in which the court remanded a single aspect of the final determination made by the United States Department of Commerce ( "Commerce") in Certain Hot-Rolled Carbon Steel Flat Products from the Netherlands, 66 Fed. Reg. 50,408 (Dep't Commerce Oct. 3, 2001), as amended by 66 Fed Reg. 55,637 (Dep't Commerce Nov. 2, 2001) ("Final Determination").  Familiarity with that decision is presumed.  The sole remaining issue involves the appropriate period for collection of provisional measures.

## BACKGROUND

Commerce issued its preliminary determination in this matter on May 3, 2001.  Notice of Preliminary Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products from the Netherlands, 66 Fed. Reg. 22,146 (Dep't Commerce May 3, 2001). Respondents Corus Staal BV and Corus Steel USA Inc. (collectively "Corus") subsequently requested an extension of the final determination pursuant to 19 C.F.R. § 353.210(b).[1]  In its

_____

[1]  19 CFR 351.210(b) provides, in relevant part:

(b) Deadline for final determination.  The deadline for a final determination under section 705(a)(1) or section 735(a)(1) of the Act will be:

    (1) Normally, not later than 75 days after the date of the Secretary's

request, Corus agreed to an extension of provisional measures from a four-month period to not

more than six months.  See Corus' May 22, 2001 Letter to Commerce.[2]  Commerce granted

postponement and stated that it would issue its final determination by September 15, 2001.

_____

> preliminary determination (see section 705(a)(1) or section 735(a)(1) of the Act);
>
> (2) In an antidumping investigation, not later than 135 days after the date of publication of the preliminary determination if the Secretary postpones the final determination at the request of:
>
> . . .
>
> (ii) Exporters or producers who account for a significant proportion of exports of the subject merchandise, if the preliminary determination was affirmative (see section 735(a)(2)(A) of the Act);

Id.

[2]  As explained in Corus I, the agreement for provisional measures was "required by regulation, 19 C.F.R. § 351.210(e)(2), and reflects the limitation on provisional measures set forth in 19 U.S.C. § 1673b(d) that prohibits the assessment of antidumping duties during the gap period after the expiration of the six month period until issuance of the order." Corus I, 259 F. Supp. 2d at 1272.  Section 1673b(d) provides, in relevant part:

> (d) Effect of determination by the administering authority.  If the preliminary determination of the administering authority under subsection (b) of this section is affirmative, the administering authority [shall (1) order the posting of appropriate cash deposits and (2) order the suspension of liquidation.]
>
> . . .
>
> The instructions of the administering authority under paragraphs (1) and (2) may not remain in effect for more than 4 months, except that the administering authority may, at the request of exporters representing a significant proportion of exports of the subject merchandise, extend that 4-month period to not more than 6 months.

Id. (emphasis added).  As a result, Commerce may not collect cash deposits, in this context, based upon the preliminary determination for more than six months.  The period between the end of the six month period and the time that Commerce may resume collection of deposits based upon the final antidumping order is referred to as the "gap period."  Commerce concedes that it is inappropriate to collect deposits during this gap period.

Postponement of Final Determination for Antidumping Duty Investigation: Certain Hot-Rolled

Carbon Steel Flat Products from the Netherlands, 66 Fed. Reg. 32,600 (Dep't Commerce June

15, 2001). Due to the events of September 11, the time-frame for issuing the determination was

extended by four (4) days. Commerce published the final determination on October 3, 2001, and

an amended final determination on November 2, 2001. See Final Determination and

accompanying Issues and Decision Memorandum, amended by 66 Fed. Reg. 55,637 (Dep't

Commerce November 2, 2001).

On November 15, 2001, the International Trade Commission ("ITC") notified Commerce

of its affirmative material injury determination. See Hot Rolled Steel Products From China,

India, Indonesia, Kazakhstan, The Netherlands, Romania, South Africa, Taiwan, Thailand, and

Ukraine, 66 Fed. Reg. 57,482 (November 15, 2001). Commerce published the antidumping

order on November 29, 2001. See Antidumping Duty Order: Certain Hot-Rolled Carbon Steel

Flat Products from the Netherlands, 66 Fed. Reg. 59,565 (Dep't Commerce November 29, 2001).

In challenging the Final Determination before this court, Corus argued, inter alia, that

provisional measures should not have been collected more than six months after the preliminary

determination was issued on May 3, 2001. Commerce agreed[3] and requested remand to include

appropriate language in the order. While both Commerce and Corus agreed that remand was in

order, they disagreed as to the final date of collection of provisional measures, i.e. the start date

of the gap period. Corus argued that, because Commerce had previously interpreted six (6)

---

[3] Commerce admits that it failed to include customary language lifting the suspension of liquidation during the gap period in its final orders as evidenced by language in a concurrent investigation. See, e.g., Notice of Antidumping Duty Orders: Certain Hot-Rolled Carbon Steel Flat Products From Argentina and the Republic of South Africa, 66 Fed. Reg. 48,242, 48,243 (Dep't Commerce September 19, 2001).

months to equal 180 days, collection should have ended on October 30, 2001.  Commerce

responded that six months equals six calendar months and, therefore, collection should have

ended on November 3, 2001 – 184 days in this case.

The court sustained Commerce's final determination in other regards but remanded the

matter "for the sole purpose of revising its antidumping order to preclude collection of

provisional measures beyond the six month period."  Corus I , 259 F. Supp. 2d at 1273 (emphasis

added).   Because Commerce's standard method for calculating the provisional measures time

period was unclear, the court ordered that, upon remand, Commerce explain its common practice

"and revise the order consistent with that practice."  Id.  In short, the sole issue was whether

Commerce normally interprets six months to equal 180 days or six calendar months.

In its remand results, Commerce agreed that its "practice with respect to our

interpretation of 'six months' in the context of provisional measures . . . has not been consistent."

Remand Determination at 2.   Commerce, therefore, states that its "current practice is to interpret

'six months' as 180 days." Id. at 3.[4]  Commerce explained that, if its redetermination is affirmed,

Commerce "will revise the antidumping duty order to include the appropriate language lifting

suspension of liquidation 180 days from the date of publication of the preliminary determination

---

[4]  In addition to the cases cited by Corus, see, e.g., Notice of Amended Final
Determination of Sales at Less Than Fair Value and Antidumping Duty ORder:  Antidumping
Duty Investigation of Low Enriched Uranium from France, 67 Fed. Reg. 6,680 (Dep't Commerce
February 13, 2002), Commerce acknowledges that it has also interpreted six months to equal 180
days in other cases.  See, e.g., Notice of Antidumping Duty Orders: Carbon and Certain Alloy
Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine, 67
Fed. Reg. 65,945, 65,947 (Dep't Commerce October 29, 2002).   As will be discussed, see
discussion infra at 7, Commerce provided an explanation of why it considered this practice
reasonable.

in the Federal Register," which in this case would be October 30, 2001.[5] Id. As would be expected, Corus agrees with Commerce's finding on that issue. See Corus Objections to Remand Determination at 2.

Commerce, however, has raised a new issue in its Remand Determination. Although the parties now agree on the proper start date for the gap period, Commerce has taken a new position as to the end date. Commerce argues that the gap period should end at the time the ITC's final injury determination is published, rather than on the date of publication of the antidumping duty order. Here, the ITC injury determination was published on November 15, 2001. The final antidumping duty order was published on November 29, 2001. In other words, Commerce argues that the gap period should run from October 30, 2001 to November 15, 2001 while Corus argues that the gap period should end on the date preceding the publication date of the antidumping duty order, November 28, 2001. With respect to Commerce's new position, Corus argues that (1) Commerce should be foreclosed from changing the end date at this late date under the "rule of mandate" and "law of the case doctrine"; and (2) that Commerce's proposed end date is otherwise erroneous and counter to its past practice.

**DISCUSSION**

**I.      Beginning of Gap Period**

As discussed, the parties agree that the start date for the gap period should be October 30, 2001 (i.e., 180 days after May 3, 2001). Commerce suggests that its revised practice, calculating

---

[5] Commerce points out that, although Corus contended that provisional measures should not be collected after October 30, 2001 (Corus Br. at 39), the proper instruction requires that provisional measures not be collected after October 29, 2001, because the collection of the provisional measures starts on the date of publication of the preliminary determination.

the gap period based upon days rather than calendar months, is reasonable for two reasons. First,

Commerce contends that the practice is more in line with its regulation for countervailing duty

investigations wherein the limit on the provisional measures time period is also set forth in days.

See 19 C.F.R. 351.210(h) (providing for a 120-day period after the publication of the preliminary

determination). Second, Commerce argues that time periods based upon days, rather than

months, "provides consistency across all cases whereas the period covered within a six month

time frame can vary or each case depending upon how many months within the six month period

consists of 28, 30, or 31 days." Remand Determination at 3. The court agrees and finds no error

in this regard.

## II.       End of the Gap Period

### A.       Rule of Mandate

As discussed, Commerce, for the first time, argues that the appropriate date to resume

collection of cash deposits is the date that the ITC publishes its final affirmative injury

determination. Remand Determination at 4. In briefing before this court, Commerce previously

agreed with Corus that the end date related to the issuance of the final order[6] and at no time

suggested that the end of the gap period was in doubt. Although there seems to be some

confusion on the part of Commerce, there is no question that the sole issue on remand was the

---

[6] In its brief in Corus I, Commerce stated:

> Commerce inadvertently excluded appropriate language from the antidumping order
> as published in the Federal Register that would lift the suspension of liquidation six
> months after the Preliminary Determination (i.e., November 3, 2001) and before the
> issuance of the antidumping order (i.e. Novermber 28, 2001).

Commerce Br. at 45-46 (emphasis added).

start date of the gap period (October 30, 2001 or November 3, 2001). Corus argues that, because

Commerce did not raise the issue before, it cannot do so now because it is bound by the limited

remand instruction under the so-called "mandate rule."[7]

Under the mandate rule, a lower court[8] or agency[9] may consider a new issue on remand

only if there is a showing that (1) controlling legal authority has changed dramatically;

(2) significant new evidence, not earlier obtainable in the exercise of due diligence, has come to

light; or (3) that a blatant error in the prior decision will, if uncorrected, result in a "serious

injustice." United States v. Bell, 5 F.3d 64, 67 (4th Cir. 1993) (quoting United States v. Bell,

988 F.2d 247, 251 (1st Cir. 1993)). Commerce has not argued that the controlling legal authority

has changed and the "new evidence" exception is inapplicable in this circumstance. As such,

Commerce may only adjust the end date of the gap period on remand if failure to previously do

---

[7] In addition, Corus argues that Commerce was precluded from addressing the end date of the gap period under the "law of the case" doctrine, under which a court "should not reopen issues decided in earlier stages of the same litigation." Agostini v. Felton, 521 U.S. 203, 236 (1997) (citing Messenger v. Anderson, 225 U.S. 436, 444 (1912)). The law of the case rule is inapplicable here because the court did not decide the final date of the gap period, explicitly or implicitly.

[8] A lower court generally is bound by the appellate court's decree and "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895); see also Briggs v. Pennsylvania R. Co., 334 U.S. 304, 306 (1948) (finding that the lower court "has no power or authority to deviate from the mandate issued by [this Court].").

[9] "Although primarily applicable between courts of different levels, the [law of the case] doctrine and the mandate rule apply to judicial review of administrative decisions, and 'require[ ] the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart.'" Grigsby v. Barnhart, 294 F.3d 1215, 1218 (10th Cir. 2002) (quoting Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998)).

so was clear error. The court finds that it was not.

Although both Commerce and Corus cite various agency decisions to suggest that Commerce has previously acted in one way or the other with respect to defining the gap period, for the purposes of this case, the threshold issue is whether there was a clear error in the agency's initial determination that must now be corrected to avoid injustice. To establish clear error in this context, Commerce must show that equating the end date for the gap period with the publication date of the final antidumping order is contrary to the statutory or regulatory scheme.

Along those lines, Commerce argues that, because 19 U.S.C. § 1673f(a) (2002) provides that provisional measures shall be collected upon entries "before notice of the affirmative determination of the Commission under section 1673d(b) of this title," definitive duties are in place upon publication of the ITC's final affirmative injury determination. This is wrong for two reasons. First, this provision was not intended to define the time period for collection of provisional measures but, rather, explains how Commerce should treat the "difference between deposit of estimated antidumping duty and final assessed duty under antidumping duty order."[10]

---

[10] 19 U.S.C. § 1673f(a) reads:

Treatment of difference between deposit of estimated antidumping duty and final assessed duty under antidumping duty order

(a) Deposit of estimated antidumping duty under section 1673b(d)(1)(B) of this title

If the amount of a cash deposit, or the amount of any bond or other security, required as security for an estimated antidumping duty under section 1673b(d)(1)(B) of this title is different from the amount of the antidumping duty determined under an antidumping duty order published under section 1673e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption before notice of the affirmative determination of the Commission under section 1673d(b) of this title is published shall be--

While there may be some other applicable provision, Commerce has not cited it. Second, that provisional measures are collected only before the ITC determination does not mean that the ITC determination triggers the collection of final duties. As such, setting the end of the gap period to coincide with publication of the final order does not conflict directly with the statute.[11] Because collecting deposits upon publication of the final order is not clearly contrary to the statute, the court cannot find that Commerce committed clear error by acquiescing in Corus' position that the gap period should have ended on November 28.

This conclusion is further supported by the fact that Commerce has itself previously found that the gap period ends on the date preceding publication of the final antidumping duty order. In Low Enriched Uranium from France, Commerce concluded that

> Section 733(d) states that the suspension of liquidation pursuant to a preliminary determination may not remain in effect for more than four months, unless exporters representing a significant proportion of exports of the subject merchandise request that the period be extended to not more than 6 months. As noted in the preliminary determination (66 FR 36743), the respondent made such a request on July 2, 2001. Therefore, entries of low enriched uranium made on or after January 9, 2002, and prior to the date of publication of this order in the Federal Register, are not liable for the assessment of antidumping duties due to the Department's discontinuation, effective January 9, 2002, of the suspension of liquidation.

Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty

---

(1) disregarded, to the extent that the cash deposit, bond, or other security is lower than the duty under the order, or

(2) refunded or released, to the extent that the cash deposit, bond, or other security is higher than the duty under the order.

Id.

[11] For the same reason, there is no problem under the related regulation, 19 C.F.R. § 351.212(d).

Order: Low Enriched Uranium From France, 67 Fed. Reg. 6680, 6681 (Dep't Commerce Feb. 13, 2002) (emphasis added); see also Notice of Antidumping Duty Orders: Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine, 67 Fed. Reg. 65,945, 65947 (Dep't Commerce Oct. 29, 2002) (finding that no duties should be assessed on subject entries during the start of the gap period and "the day preceding the date of publication of this notice [the final antidumping duty order] in the Federal Register.").[12]   The court does not decide whether the gap period generally should end on the publication date of the ITC injury determination or the publication date of the final antidumping duty order.  Rather, the court finds that Commerce has not shown the clear error required to raise this new issue following the court's limited remand instruction in the initial challenge.

_____

[12]      The court finds it curious that, although Corus pointed to 19 C.F.R. 351.210(h), which addresses the collection of provisional measures in countervailing duty cases, as a comparator to support defining the period for collection of provisional measures in days rather than months, see discussion supra at 6-7, Commerce does not acknowledge the obvious importance of the final order in that context.  The regulation provides that:

> If the Secretary postpones a final countervailing duty determination, the Secretary will end any suspension of liquidation ordered in the preliminary determination not later than 120 days after the date of publication of the preliminary determination, and will not resume it unless and until the Secretary publishes a countervailing duty order.

Id. (emphasis added).

## CONCLUSION

For the foregoing reasons, the court sustains that portion of Commerce's <u>Remand Determination</u> agreeing that the provisional measures should not have been collected more than 180 days after the preliminary determination (i.e. not after October 29, 2001). The court reverses that portion of the <u>Remand Determination</u> in which Commerce now seeks to define the end date for the gap period as November 15, 2001. The court orders Commerce to revise its determination within 20 days hereof to reflect the last day of the gap period as November 28, 2001 and to advise the court of its issuance so that judgment may be entered.

SO ORDERED

_____
Jane A. Restani
Judge

DATED:  New York, New York

This 12th of August, 2003.