Slip Op. 10-61

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

NATIONAL FISHERIES INSTITUTE,
INC., ET AL.,

        Plaintiffs,

v.

UNITED STATES BUREAU OF
CUSTOMS AND BORDER
PROTECTION,

        Defendant.

</td><td>

**Before: Timothy C. Stanceu, Judge**

**Court No. 05-00683**

</td></tr>
</table>

## OPINION AND ORDER

[Ordering additional remand of redetermination by United States Customs and Border Protection of limits of liability for certain bonds on which plaintiffs are principals]

Dated: May 25, 2010

*Steptoe & Johnson LLP* (*Eric C. Emerson*, *Gregory S. McCue*, and *Michael A. Pass*) for plaintiffs.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); *Chi S. Choy*, Customs and Border Protection, United States Department of Homeland Security, of counsel, for defendant.

Stanceu, Judge: Before the court is the redetermination ("Remand Redetermination") that

United States Customs and Border Protection ("Customs," "CBP," or the "Agency") issued in

response to the court's remand order in *National Fisheries Institute, Inc. v. U.S. Bureau of*

*Customs & Border Protection*, 33 CIT __, 637 F. Supp. 2d 1270 (2009) ("*National*

*Fisheries II*"). Plaintiffs (the "NFI Importers") are domestic importers of shrimp who brought

this action to contest the application by Customs of a new, more stringent bonding requirement

(the "enhanced bonding requirement," or "EBR") to determine the limits of liability on bonds that Customs required of all importers of shrimp products subject to antidumping duty liability. *Id.* at __, 637 F. Supp. 2d at 1273. In *National Fisheries Institute, Inc. v. U.S. Bureau of Customs & Border Protection*, 30 CIT 1838, 465 F. Supp. 2d 1300 (2006) ("*National Fisheries I*"), the court ordered preliminary injunctive relief. In *National Fisheries II*, the court, ruling on plaintiffs' motion for judgment upon the agency record, held "that the enhanced bonding requirement is arbitrary and capricious in imposing greatly increased bond requirements only on importers of shrimp products," that it "is unreasonable in applying a formula that secures potential antidumping duties at a substantial amount over the required cash deposit," and that it resulted from the Agency's exceeding its discretion. *Nat'l Fisheries II*, 33 CIT at __, 637 F. Supp. 2d at 1274. The court ordered Customs to redetermine the liability limits on the bonds on which the plaintiffs in this case are principals. *Id.* at __, 637 F. Supp. 2d at 1304-05. Because the Remand Redetermination is not, in all respects, a satisfactory resolution of the remaining issues in this litigation, the court orders a second remand.

## I. BACKGROUND

Background information is presented in *National Fisheries I*, 30 CIT at 1843-47, 465 F. Supp. 2d at 1305-09, and in *National Fisheries II*, 33 CIT at __, 637 F. Supp. 2d at 1274-81. A brief summary of the background is presented herein.

Customs Directive 99-3510-004 (the "Bond Directive" or "Directive 99-3510-004"), originally issued by Customs on July 23, 1991, established guidelines under which Customs port directors are to assess the adequacy of an importer's continuous entry bond. *See Monetary Guidelines for Setting Bond Amounts*, Directive 99-3510-004 (July 23, 1991),

http://www.cbp.gov/linkhandler/cgov/trade/legal/directives/3510-004.ctt/3510-004.txt (last

visited May 25, 2010) ("*Bond Directive*").  Before Customs amended it in 2004, the Bond

Directive set a non-discretionary, minimum continuous entry bond amount at $50,000 and

established a formula by which "the bond limit of liability amount shall be fixed in multiples of

$10,000 [or $100,000] nearest to 10 percent of duties, taxes and fees paid by the importer or

broker acting as importer of record during the calendar year preceding the date of the [bond]

application." *Id.* (setting forth formulas under "Activity 1 - Importer or Broker - Continuous").

Whether the bond limit was fixed in multiples of $10,000 or $100,000 depended upon whether

the total duty and tax liability for an importer during the calendar year preceding its bond

application exceeded $1,000,000.  *Id.*

A.  Modifications of the Bond Directive and Its Application to Shrimp Importers

Customs, on July 9, 2004, posted on its website an amendment to the Bond Directive (the

"Amendment"), which set forth new formulas for use in calculating minimum continuous entry

bond amounts in certain circumstances.  *See Amendment to Bond Directive 99-3510-004 for*

*Certain Merchandise Subject to Antidumping/Countervailing Duty Cases* (July 9, 2004)

("*Amendment*") (Mem. of P. & A. in Supp. of Pls.' Mot. for Prelim. Inj., Ex. 1 ("Pls. Prelim. Inj.

Mem.")).  The Amendment was the first issuance of several in which Customs set forth special

bonding requirements for application to importers of agricultural and aquacultural merchandise

that is subject to an antidumping or countervailing duty order.  The Amendment required all

Customs port directors "to review continuous bonds for importers who import

agriculture/aquaculture merchandise subject to antidumping/countervailing duty cases and obtain

larger bonds where necessary." *Amendment.*  A formula in the Amendment directed that "in

fixing the limit of liability amount," port directors will calculate the product of an importer's

antidumping or countervailing duty rate and the value of merchandise subject to antidumping or

countervailing duties imported by that importer during the previous year. *Id.* (setting forth the

formula as the "[Commerce] rate at Order [multiplied by the] value of imports of merchandise

subject to the case by the importer during the previous year").

On January 24, 2005, Customs posted on its website a document entitled "Current Bond

Formulas," which contained, *inter alia*, the formulas described in the Amendment. *Current

Bond Formulas* (Jan. 24, 2005) (Pls. Prelim. Inj. Mem., Ex. 2). Customs also stated in the

document that a "new comprehensive CBP Directive will be issued at a later date." *Id.*

In February 2005, subsequent to the issuance of the Amendment and Current Bond

Formulas, Commerce issued antidumping duty orders for certain frozen warmwater shrimp from

Brazil, China, Ecuador, India, Thailand, and Vietnam.[1] Pursuant to the Amendment and Current

Bond Formulas, Customs issued to all twenty-seven plaintiffs letters advising that their

continuous entry bonds had been deemed insufficient under the Customs regulations, 19 C.F.R.

---

[1] *Notice of Am. Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Brazil*, 70 Fed. Reg. 5143 (Feb. 1, 2005); *Notice of Am. Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Certain Frozen Warmwater Shrimp From the People's Republic of China*, 70 Fed. Reg. 5149 (Feb. 1, 2005); *Notice of Am. Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Ecuador*, 70 Fed. Reg. 5156 (Feb. 1, 2005); *Notice of Am. Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India*, 70 Fed. Reg. 5147 (Feb. 1, 2005); *Notice of Am. Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Thailand*, 70 Fed. Reg. 5145 (Feb. 1, 2005); *Notice of Am. Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 70 Fed. Reg. 5152 (Feb. 1, 2005).

Part 113 (2004), and required plaintiffs to obtain new continuous entry bonds with substantially higher limits of liability. *Nat'l Fisheries I*, 30 CIT at 1845, 465 F. Supp. 2d at 1307.

After the application of the Amendment to shrimp importers' bonds, Customs posted on its website a clarification to the Amendment of the Bond Directive (the "Clarification"), which established two classes of merchandise, "Special Categories" and "Covered Cases." *See Clarification to July 9, 2004 Amended Monetary Guidelines for Setting Bond Amounts for Special Categories of Merchandise Subject to Antidumping and/or Countervailing Duty Cases* 3 (Aug. 10, 2005) (Pls. Prelim. Inj. Mem., Ex. 3). The Clarification designated only agricultural/aquacultural merchandise as a Special Category and only shrimp antidumping and countervailing duty cases as Covered Cases. *Id.* As a result, importers of shrimp subject to antidumping orders are the only U.S. importers who were subjected to the enhanced bonding requirement.

In October 2006, more than a year after the issuance of the Clarification, and over nine months after plaintiffs had commenced their lawsuit on December 21, 2005, *see* Summons, Customs published a Federal Register notice (the "October 2006 Notice") "to provide additional information on the process used to determine bond amounts for importations involving elevated collection risks and to seek public comment on that process." *Monetary Guidelines for Setting Bond Amounts for Importations Subject to Enhanced Bonding Requirements*, 71 Fed. Reg. 62,276, 62,276 (Oct. 24, 2006) ("*Oct. 2006 Notice*"). The October 2006 Notice announced changes to the process discussed in the Amendment and the Clarification and, although inviting public comment, made the changes in the process effective upon publication. *Id.* at 62,276-78. Despite the changes, Customs retained the same basic formulas for calculating limits of liability

for the continuous entry bonds required of importers of merchandise in Special Categories. *Id.*

at 62,277. The October 2006 Notice also reiterated much of the procedure for appeal first set

forth in the Clarification. *Id.* at 62,278. Unlike the Amendment and the Clarification, the

October 2006 Notice was published in the Federal Register.

## B. Judicial Proceedings

Plaintiffs filed their summons and complaint in December 2005. Summons; Compl. In

November 2006, the court granted a preliminary injunction with respect to eight of the twenty-

seven plaintiffs in this action after considering the Bond Directive as modified by the

Amendment, Current Bond Formulas, and Clarification. *Nat'l Fisheries I*, 30 CIT at 1842,

465 F. Supp. 2d at 1305. The court issued the injunction to maintain the *status quo* and limited

the injunction to the eight plaintiffs who had testified before the court, on the ground that only

those eight plaintiffs had demonstrated immediate, irreparable harm. *Id.* at 1880-81, 465 F.

Supp. 2d at 1333. The court also ordered Customs to review, and modify as appropriate, the

sufficiency determinations it had made on certain of the bonds of the eight plaintiffs addressed in

the preliminary injunction order. *Id.* at 1883, 465 F. Supp. 2d at 1335. Soon thereafter, as

directed in the preliminary injunction order, defendant reported on the status of certain member

plaintiffs with bonds for which the limit of liability was $1.5 million or greater. *See* Status

Report in Resp. to the Ct.'s Inj. 1, Jan. 26, 2007.

On January 18, 2007, plaintiffs moved for judgment upon the agency record pursuant to

USCIT Rule 56.1, which defendant opposed. Pls.' Mot. for J. on the Agency R.; Def.'s Resp. in

Opp'n to NFI's Mot. for J. Upon the Admin. R. The court held oral argument in April 2007.

Oral Argument Tr., Apr. 17, 2007. In March 2008, at defendant's request, the court held an *in*

*camera* status conference on the record, during which plaintiffs set forth the status of plaintiffs' individual bonds. Status Conference Tr. (Confidential) 6-27, Mar. 28, 2008. Plaintiffs later submitted additional information on plaintiffs' individual bonds. Pls.' Submission of Supplemental Information Requested by the Ct. During *In Camera* Proceedings on Mar. 28, 2008.

In *National Fisheries II*, the court held that "[a]ll of the individual bond sufficiency determinations at issue . . . must be set aside as contrary to law" because they were "unlawful in multiple respects." 33 CIT at __, 637 F. Supp. 2d at 1304. The court ordered, *inter alia*, that the enhanced bonding requirement and all bond determinations made pursuant to such requirement be set aside as arbitrary, capricious, and otherwise not in accordance with law, *id.*, and that Customs "effect, in accordance with [the opinion and order in *National Fisheries II*], an individual redetermination of the limit of liability on each individual continuous entry bond at issue in this action without application of the enhanced bonding requirement." *Id.* at __, 637 F. Supp. 2d at 1305.

On September 3, 2009, defendant moved for a clarification of the court's order in *National Fisheries II*. Def.'s Mot. for Clarification. The court denied this motion in *National Fisheries Institute, Inc. v. U.S. Bureau of Customs & Border Protection*, 33 CIT __, Slip Op. 09-104 (Sept. 25, 2009).

Customs filed remand results in which it states that it redetermined the limit of liability on each of plaintiffs' continuous entry bonds at issue in this action according to the 10% formula set forth in the Bond Directive issued in 1991. Redetermination, Oct. 26, 2009 ("Remand Redetermination"); *Bond Directive*. Plaintiffs object to the Remand Redetermination on several

grounds and request that the court order Customs to "cancel each of Plaintiffs' bonds that have a

liability limit determined according to the unlawful enhanced bonding requirements without

requiring any NFI Importer to obtain superseding bonds" and "to issue written confirmation of

bond cancellation to the sureties, and provide any other materials or assistance necessary to

facilitate the return of collateral from the sureties to Plaintiffs."  Pls.' Comments on Remand

Determination 10 ("Pls.' Comments").  Plaintiffs state that further remand would be futile

because defendant has not complied with the remand order, arguing that Customs unlawfully

considered antidumping duty liability in redetermining bond limits according to a formula, failed

to consider the real financial risk as confined to unliquidated entries, failed to provide any

explanation for the redeterminations, and failed to indicate a time period in which it would cancel

the bonds.  Pls.' Comments 2, 7-9.

C.  Proceedings Subsequent to Dispute Settlement at the World Trade Organization

Prior to the court's issuance of its opinion in *National Fisheries II*, Customs concluded it

would cease application prospectively of the enhanced bonding requirement.  *Enhanced Bonding

Requirement for Certain Shrimp Importers*, 74 Fed. Reg. 14,809, 14,811 (Apr. 1, 2009)

("*Apr. 2009 Notice*").  Customs adopted this position because parallel proceedings at the World

Trade Organization ("WTO") resulted in decisions by the Dispute Settlement Body of the WTO

that held that the application of the enhanced bonding requirement to shrimp importers is

inconsistent with the obligations of the United States.  *See Enhanced Bonding Requirement for

Certain Shrimp Importers*, 74 Fed. Reg. 1224, 1224 (Jan. 12, 2009) ("*Jan. 2009 Notice*").  The

United States determined it would comply with the decisions of the World Trade Organization

and, in early 2009, Customs published a notice proposing to end the designation of shrimp

subject to antidumping or countervailing duty orders as a special category or covered case subject to the enhanced bonding requirement ("January 2009 Notice"). *Id.* at 1225. Customs stated that "shrimp importers may request termination of existing continuous bonds pursuant to 19 C.F.R. [§] 113.27(a) and submit a new continuous bond application pursuant to 19 C.F.R. [§] 113.12(b)." *Id.* Customs explained that "[a]ny change to the designation of [shrimp] and the bond amounts required of importers of [shrimp] will be effective for entries made on or after the date of publication of the final notice." *Id.*

The court held a telephonic status conference with the parties after granting defendant's motion for leave to file a status report addressing the January 2009 Notice. *See* Order, Feb. 17, 2009; Status Report (Def.), Feb. 17, 2009. In the conference, counsel for defendant responded to the court's question concerning the Agency's intention regarding the various bonds that are the subject of this litigation. The court asked, specifically, if Customs intended to take actions that could resolve the remaining disputes between the parties. Counsel for defendant clarified that the January 2009 Notice did not signify an intent on the part of Customs to consider terminating, and allowing substitution of, any bonds other than those on which importers of shrimp currently are importing merchandise. In the conference, the parties confirmed to the court that the liability limits on some continuous bonds for past periods of importations remained in contention and that the current proposal by Customs, if implemented, would not resolve the remaining issues in this litigation.

On April 1, 2009, Customs published a second notice concerning its implementation of the Appellate Body decision ("April 2009 Notice"). *Apr. 2009 Notice*, 74 Fed. Reg. 14,809. Customs announced that it was ending the designation of shrimp subject to antidumping or

countervailing duty orders as a special category or covered case subject to an enhanced bonding requirement. *Id.* at 14,809. Customs announced that it would permit importers to seek termination of current bonds but confirmed that it would take no action to alter the liability on bonds for previous terms. *Id.* at 14,811-12. Customs gave several reasons for refusing to apply retroactively its rescission of the enhanced bonding requirement. *Id.* Customs mentioned its obligation to protect the revenue and ensure compliance with law; its reluctance to interfere with the contractual relationship between principals and sureties; its concern that the existence of two bonds for the same period could pose legal confusion and lead to court action between competing sureties, resulting in serious risk to the agency's ability to collect duties lawfully owed; and that the court, in *National Fisheries I*, did not order Customs to take any action on the previous bonds. *Id.*

## II. DISCUSSION

The Remand Redetermination before the court consists of a one-page document, which sets forth the decision Customs reached on remand, and an "Exhibit A," which presents information on individual continuous entry bonds for each of twenty-seven plaintiff importers. *See* Remand Redetermination 1. For each such bond, Exhibit A lists the "Bond Number," the "Bond Period," the "Liability Amount," and the "Bond Amount if Calculated without Regard to Enhanced Bonding Requirement (EBR) and Different from Actual Bond Amount." *Id.* Ex. A. The Remand Redetermination states that "[t]he redeterminations were made by application of Customs Directive 99-3510-004, . . . i.e., the limit of liability was determined based on 10 percent of the duties, taxes and fees (ten percent formula) paid by the importer during the

relevant bond period" and sets forth one of the new bond amount calculations as an example. Remand Redetermination 1.

The Remand Redetermination further states that "[i]n addition to the bonds with limits of liability calculated using the EBR, the attached spreadsheet [Exhibit A] also includes the bonds that were in place before the EBR was applied." *Id.* Customs explains that "[a] review of the total duties, taxes, and fees paid during those bond periods indicate that the limits of liability should have been higher" and sets forth an example of an individual bond redetermination. *Id.*

Contesting the Remand Redetermination as unreasonable and contrary to law, plaintiffs raise three principal objections. First, they argue that Customs exceeded its authority when it determined the new bond amounts by applying a fixed ten-percent formula to a sum of duties, taxes, and fees that included potential antidumping duty liability, rather than determining new bond amounts individually after considering the payment history or financial circumstance of the plaintiff importers. Pls.' Comments 3-4. Second, plaintiffs argue that the recalculation "fail[s] to recognize that many prior entries have been liquidated and now should no longer be included in the calculation" because application of 10% bonding to "the amount of all entries during a given bond period, regardless of their liquidation status, dramatically overstates the amount of security necessary." *Id.* at 5. Third, plaintiffs object that Customs, in applying Directive 99-3510-004, increased the bond amounts for certain older bonds to which the enhanced bonding requirement was never applied, an action they characterize as contrary to the court's decision in *National Fisheries II. Id.* at 7. Arguing that a further remand would be futile, plaintiffs urge the court to "issue an Order that shall cancel each of Plaintiffs' bonds that have a liability limit determined according to the unlawful enhanced bonding requirements without requiring any NFI

importer to obtain superseding bonds." *Id.* at 10.  Plaintiffs request, further, that the court order

defendant "to issue written confirmation of bond cancellation to the sureties, and provide any

other materials or assistance necessary to facilitate the return of collateral from the sureties to

Plaintiffs." *Id.*

### A.  Inclusion of Antidumping Duties and Deposits in the 10% Calculation

Plaintiffs' first objection to the Remand Redetermination is that Customs exceeded its

authority when it determined the new bond amounts by applying a fixed 10% formula to a sum of

duties, taxes, and fees that included potential antidumping duty liability, rather than determining

new bond amounts individually after considering the payment history or financial circumstance

of the plaintiff importers.  Pls.' Comments 3-4.  Plaintiffs argue that the Remand

Redetermination is inconsistent with the decision in *National Fisheries II* and "cannot be

sustained." *Id.* at 2.  Plaintiffs interpret *National Fisheries II* to hold that the authority of

Customs "to establish its own security for potential antidumping liability over and above the cash

deposit required by Commerce was extremely limited," *id.* at 3, and that Customs "can require

security for potential antidumping duty liability only under limited circumstances, such as when

supported by actual evidence of a likely inability to pay." *Id.* at 4.

Plaintiffs' argument misconstrues the holding of *National Fisheries II*.  The case held that

Customs acted unreasonably and contrary to law in imposing an onerous new bonding

requirement that in effect demanded security of 100% in addition to the required antidumping

cash deposit.  *National Fisheries II*, 33 CIT at __, 637 F. Supp. 2d at 1294.  The court's decision

rejected in part plaintiffs' argument that Customs lacks authority to consider potential

antidumping duty liability when setting amounts for continuous entry bonds.  *Id.  National*

*Fisheries II* did not hold that Customs lacks authority to include potential antidumping duty liability in the 10% calculation when applying the Bond Directive. That directive, originally issued in 1991 as Directive 99-3510-004, set a non-discretionary, minimum continuous entry bond amount at $50,000 and established a formula by which "the bond limit of liability amount shall be fixed in multiples of $10,000 [or $100,000] nearest to 10% of duties, taxes and fees paid by the importer or broker acting as importer of record during the calendar year preceding the date of the [bond] application." *See National Fisheries II*, 637 F. Supp. 2d at 1274 (quoting *Bond Directive*).

As the court observed in *National Fisheries II*, the cash deposit represents an estimate by Commerce of the future antidumping duty liability. *National Fisheries II*, 33 CIT at __, 637 F. Supp. 2d at 1293-94. Any estimate may be expected to vary to some degree from the final ascertained amount. The court does not consider it unreasonable, or an abuse of discretion, for Customs to allow for the possibility that the final ascertained antidumping duty liability on an entry may exceed that estimate by 10%.[2] In applying the formula of the Bond Directive in the Remand Redetermination, Customs treated antidumping duty deposits in the same way in which it treated ordinary duties, for which an importer deposits estimated duties upon making entry of the merchandise. Because Customs is granted a measure of discretion by 19 U.S.C. § 1623 (2000) to set bond liability limits to protect the revenue, the court disagrees with plaintiffs'

---

[2] Application of the 10% formula of Directive 99-3510-004 to a bond determination by Customs was upheld in *Carolina Tobacco Co. v. Bureau of Customs & Border Protection*, 402 F.3d 1345 (Fed. Cir. 2005). That case did not involve the question of whether it is lawful for Customs to include antidumping duties within the 10% formula of Directive 99-3510-004. *See id.* The holding in *Carolina Tobacco Co.*, therefore, does not control the outcome on the issues presented by this redetermination upon remand ("Remand Redetermination").

argument that Customs lacks authority to include potential antidumping duty liability when applying the 10% formula of the Bond Directive. Accordingly, the court rejects the first argument that plaintiffs advance in objecting to the Remand Redetermination.

B.  Inclusion of Duties from Liquidated Entries in the Calculation of the Bond Amount

Second, plaintiffs argue that the recalculation "fail[s] to recognize that many prior entries have been liquidated and now should no longer be included in the calculation" and, therefore, that the application of 10% to "the amount of all entries during a given bond period, regardless of their liquidation status, dramatically overstates the amount of security necessary." Pls.' Comments 5. According to plaintiffs, "[a]s the agency responsible for liquidating these entries, CBP has exact information on the liquidation status of all entries for all NFI Importers for all bonding periods" and that "[w]ith minimal effort, CBP could have determined how many of these entries remained unliquidated."[3] *Id.* at 6. "As a result," plaintiffs contend, "CBP's bond[s] are unreasonably high given the amount of entries that remain unliquidated." *Id.*

Customs states in the Remand Redetermination that it has decided to base its redetermined bond amounts on "10 percent of the duties, taxes and fees (ten percent formula) paid by the importer during the relevant bond period" but does not explain why doing so is appropriate even though liquidations likely have occurred during the significant time elapsing since the end of each "relevant bond period." Remand Redetermination 1. The question of whether duties, taxes, and fees for already-liquidated entries should be included becomes relevant because Customs, due to the special circumstances of this case, is determining bond amounts for

---

[3] Counsel for plaintiffs indicate that they offered to provide to Customs the status of the liquidation of entries for each plaintiff but that Customs did not reply. Pls.' Comments on Remand Determination 6, n.2 ("Pls.' Comments").

periods that long ago have ended.  This is in contrast to the ordinary situation in which Customs applies Directive 99-3510-004, whereupon a liability limit for the "relevant bond period" is determined prospectively, before entries have occurred.[4]

It may be argued that Customs, by applying the formula to the original amount, would place the plaintiffs in the position that would have resulted had the enhanced bonding requirement never been imposed, due to the existing practice under which a bond ordinarily is not cancelled until all liability is satisfied for all entries secured thereunder.  Although such an argument may have merit in the general context of bond cancellations, the court finds it unconvincing in the particular circumstances of this litigation.  Application of the 10% formula to the entire amount of duties, taxes, and fees for the bond period, including duties on entries for which liquidation is final and liability is satisfied, results in an actual level of security that could exceed substantially the guideline level of 10%, as applied to the actual amount of duties at risk of nonpayment.  A liquidated entry on which all liability for duties, taxes, and fees has been ascertained upon liquidation and paid poses no appreciable risk to the revenue.  Therefore, a bond sufficiency calculation that does not make an adjustment for such entries cannot be described as reasonable and would treat plaintiffs less favorably than importers are treated generally when Directive 99-3510-004 is applied.  In resolving the remaining issues in this litigation, the court must require that Customs treat plaintiffs fairly and equitably.  Setting bond

---

[4] Directive 99-3510-004 applies the 10% calculation to "duties, taxes and fees paid by the importer or broker acting as importer of record during the calendar year *preceding the date of the [bond] application*." *Monetary Guidelines for Setting Bond Amounts*, Directive 99-3510-004 (July 23, 1991), http://www.cbp.gov/linkhandler/cgov/trade/legal/directives/3510-004.ctt/3510-004.txt (last visited May 25, 2010) (emphasis added) ("*Bond Directive*").  Directive 99-3510-004 does not address the specific situation of a superceding bond for a period that occurred years prior to the date on which the decision is being made.

amounts without adjusting for entries on which all duty liability has been satisfied would not

satisfy this objective, on the record before the court.  Moreover, in resolving the remaining issues

in this protracted litigation, the court is mindful that plaintiffs unreasonably have been forced to

incur costs resulting from an unlawful enhanced bonding requirement to which other, similarly-

situated importers were never subjected.[5]

On remand, Customs must reconsider its application of the 10% formula to amounts that

include entries for which duty liability, as determined upon liquidation, is already satisfied.  If

Customs again chooses to apply the 10% bond formula of Directive 99-3510-004, it must

consider the special circumstances of this litigation and must ensure a reasonable result that is

demonstrably fair and equitable to plaintiffs in the context of this litigation.

C.  Increases in Liability Limits for Certain Older Bonds

Customs announced in the Remand Redetermination its intention to change the liability

limits for certain of plaintiffs' bonds that were determined before the enhanced bonding

requirement was applied, stating that "[t]he limits of liability for these bonds were generally set

at the minimum amount of $50,000."  Remand Redetermination 1.  As a reason for taking this

action, the Remand Redetermination states that "[a] review of the total duties, taxes, and fees

paid during those bond periods indicate that the limits of liability *should have been higher*."  *Id.*

(emphasis added).  The Remand Redetermination identifies these older bonds by number and

---

[5] As discussed in the background section of this Opinion and Order, Customs decided not to provide complete relief to the plaintiff-importers after issuing *Enhanced Bonding Requirement for Certain Shrimp Importers*, 74 Fed. Reg. 1224, 1225 (Jan. 12, 2009) ("*Jan. 2009 Notice*"); *see Enhanced Bonding Requirement for Certain Shrimp Importers*, 74 Fed. Reg. 14,809, 14,811 (Apr. 1, 2009) ("*Apr. 2009 Notice*").  That decision by the Agency extended the time during which plaintiffs were subjected to the enhanced bonding requirement and prolonged this litigation.

specifies a new limit of liability based on the 10% formula. *See id.*, Ex. A. Plaintiffs object that "Defendant's review did not consider either the particular NFI Importer's ability to pay or the liquidation status of any entries covered by these bonds." Pls.' Comments 7.

The court gleans from the one-page Remand Redetermination, viewed in the context of the record in this case, that Customs is addressing older bonds, for previous bond periods, to which Customs never applied the enhanced bonding requirement and which have not before been at issue in this litigation. *See* Remand Redetermination 1. Beyond the statement that "the limits of liability *should have been higher*," *id.* (emphasis added), Customs gives no reason why it has decided to take this action in the Remand Redetermination although not ordered to do so. The Agency's decisions to modify the liability limits on the older bonds in question exceeds the scope of the court's remand order in *National Fisheries II*, which addressed only those individual bond sufficiency determinations that were effected according to the enhanced bonding requirement.[6] *Nat'l Fisheries II*, 33 CIT at __, 637 F. Supp. 2d at 1304-05.

---

[6] In *National Fisheries II*, the court, *inter alia*,

> **ORDERED** that all of plaintiffs' individual bond sufficiency determinations that were made according to the enhanced bonding requirement be, and hereby are, set aside as arbitrary, capricious, and otherwise not in accordance with law; [and] . . .
>
> **ORDERED** that the individual bond sufficiency determinations at issue in this action are remanded to Customs for redetermination . . . during which remand period Customs shall effect, in accordance with this Opinion and Order, an individual redetermination of the limit of liability on each individual continuous entry bond at issue in this action without application of the enhanced bonding requirement unless it chooses to cancel all liability on a bond outright, as provided in this Opinion and Order.

*Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs & Border Prot.*, 33 CIT __, __, 637 F. Supp. 2d 1270, 1304-05 (2009) ("*National Fisheries II*").

Under the "rule of mandate," a court ordinarily will not permit an agency to consider a new issue on remand. *See Corus Staal BV v. U.S. Dep't of Commerce*, 27 CIT 1180, 1184 & n.9, 279 F. Supp. 2d 1363, 1368 & n.9 (2003). Exceptions to the rule of mandate have been recognized, but they do not apply here. *Id.* at 1184, 279 F. Supp. 2d at 1368 (citing *United States v. Bell*, 5 F.3d 64, 67 (4th Cir. 1993)) (recognizing exceptions where controlling legal authority has changed dramatically; significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light; or a blatant error in the prior decision will, if uncorrected, result in a serious injustice). Therefore, in the second remand redetermination Customs may not specify increases in liability limits for these older bonds, which liability limits previously have not been at issue in this litigation.

### D. Cancellation of Existing Bonds

Plaintiffs base their argument that the court should order, at this time, cancellation of the bonds at issue in this case on their premise that a further remand would be futile due to "Defendant's conduct," which plaintiffs characterize as being in bad faith. Pls.' Comments 7-8. They perceive bad faith in the alleged failure of Customs to comply with the language in *National Fisheries II* describing the limited nature of Customs' authority to require security for antidumping duty liability and also in the failure of Customs to specify when it intends to cancel the existing bonds. *Id.* at 8. Additionally, they argue that "[e]ven more egregiously, by refusing to consider the liquidation status of entries covered by these bonds, Defendant's recalculations fail to reflect the real financial risk, *if any*, faced by the United States." *Id.*

Plaintiffs' arguments do not convince the court that ordering a second remand would be futile in the circumstances of this case. Plaintiffs' first argument concerning the scope of

authority to provide security for underpayment of antidumping duties is unavailing because it misconstrues *National Fisheries II*. The court discussed above why it disagrees with plaintiffs' view that Customs lacks any authority to include antidumping duty liability in the 10% calculation of Directive 99-3510-004. Concerning the time frame for cancellation of the bonds, raised in plaintiffs' second argument, Customs was not ordered in *National Fisheries II* to specify a particular date or dates on which it would effect such cancellations. *See* 33 CIT at __, 637 F. Supp. 2d at 1304-06. Plaintiffs' third argument is also unconvincing. Customs has not yet had the opportunity to respond to the court's conclusion, reached in this Opinion and Order, that Customs has failed to achieve an adequate resolution of the issue of entries for which liquidation has occurred and duty liability has been satisfied. Although the court finds unsatisfactory the resolution of that issue by Customs thus far, the procedural posture of this case refutes plaintiffs' position that Customs has demonstrated bad faith such that it should not be given the opportunity to issue a second remand redetermination that corrects the problem the court has identified.

### III. CONCLUSION

Although Customs has responded to certain issues the court raised in *National Fisheries II*, the Remand Redetermination is not in all respects a satisfactory resolution of the remaining issues in this litigation. The decisions in the Remand Redetermination fail to treat plaintiffs reasonably or fairly and are particularly inequitable when compared to the treatment Customs has accorded importers that were never subject to the enhanced bonding requirement. In addition, Customs impermissibly has sought to effect increases in liability limits for bonds and bond periods not previously at issue in this litigation and beyond the scope of the court's

mandate. Accordingly, the court remands this matter to Customs for reconsideration and

redetermination in accordance with the decisions the court has reached in this Opinion and Order.

## ORDER

For the reasons stated in this Opinion and Order, upon consideration of the

Redetermination of United States Customs and Border Protection ("Customs"), dated Oct. 26,

2009 ("Remand Redetermination"), and all papers and proceedings herein, upon due

deliberation, and in accordance with the scope of the court's remand order in *National Fisheries*

*Institute, Inc. v. U.S. Bureau of Customs & Border Protection*, 33 CIT __, 637 F. Supp. 2d 1270

(2009) ("*National Fisheries II*"); it is hereby

**ORDERED** that the Remand Redetermination be, and hereby is, remanded to Customs
for reconsideration and redetermination; it is further

**ORDERED** that Customs, in its second remand redetermination, shall redetermine, as
appropriate according to the decisions the court has reached in this Opinion and Order, the limits
of liability for the bonds and bond periods at issue in this litigation; it is further

**ORDERED** that Customs, in its second remand redetermination, may not increase the
limit of liability for any bond or bond period that was not previously at issue in this litigation and
with respect to which the enhanced bonding requirement was never applied; it is further

**ORDERED** that Customs shall submit its second remand redetermination within thirty
(30) days from the date of this Opinion and Order; it is further

**ORDERED** that plaintiffs may submit comments in response to the second remand
redetermination within fifteen (15) days of the date on which the second remand redetermination
is submitted; and it is further

**ORDERED** that defendant may submit comments replying to plaintiffs' comments
within fifteen (15) days of the date on which plaintiffs' comments are submitted.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: May 25, 2010
　　　New York, New York